TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
CATHERINE S. AHN (Cal. Bar No. 248286)
MORGAN J. COHEN (Cal. Bar No. Pending)
Assistant United States Attorneys
Major Frauds/General Crimes Sections
     1100/1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2424/2848
     Facsimile: (213) 894-0141
     E-mail:  Catherine.S.Ahn@usdoj.gov
             Morgan.Cohen@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-42-SVW |
|---|---|
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Trial Date: November 4, 2021<br>Trial Time: 9:00 AM<br>Location: Courtroom of the<br>Hon. Stephen V.<br>Wilson |
| VICTOR A. OHIRI and<br>STEPHEN O. DANIELSON-OHIRI, | |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Morgan J. Cohen and Catherine S. Ahn, hereby files its trial memorandum.

//

//

1      The government respectfully requests leave to file additional

2 memoranda as may become appropriate during the course of the trial.

3  Dated: October 28, 2021        Respectfully submitted,

4                                 TRACY L. WILKISON
                                  Acting United States Attorney
5
                                  SCOTT M. GARRINGER
6                                 Assistant United States Attorney
                                  Chief, Criminal Division
7
                                      /s/
8                                 _____
                                  MORGAN J. COHEN
9                                 CATHERINE S. AHN
                                  Assistant United States Attorneys
10
                                  Attorneys for Plaintiff
11                                UNITED STATES OF AMERICA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

**TABLE OF CONTENTS**

**DESCRIPTION**                                                      **PAGE(S)**

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    STATUS OF THE CASE.............................................1

II.   INDICTMENT AND ELEMENTS.......................................1

III.  STATEMENT OF FACTS............................................2

IV.   ANTICIPATED TRIAL EVIDENCE....................................3

      A.    Witnesses...............................................3

      B.    Types of Evidence.......................................5

V.    MOTIONS IN LIMINE.............................................8

VI.   LEGAL AND EVIDENTIARY ISSUES..................................9

      A.    Stipulations............................................9

      B.    Business and Public Records.............................9

      C.    Co-Conspirator Statements Made to Bank Employees........13

      D.    Authentication and Foundation...........................15

      E.    Cross-Examination of Defendants and Defense Witnesses....16

            1.    Cross Examination of Defendants...................16

            2.    Cross-Examination of Defense Witnesses............16

      F.    Defendants May Not Introduce Their Own Statements,
            Texts, Email Messages, or Call Recordings...............18

      G.    Defendant Stephen Danielson-Ohiri's Proffer Statements...20

      H.    Reciprocal Discovery....................................21

      I.    Affirmative Defenses....................................21

      J.    Jury Nullification......................................21

VII.  CONCLUSION...................................................22

1

**TABLE OF AUTHORITIES**

2

**CASES**

3
Bourjaily v. United States,
     483 U.S. 171 (1987)...............................................14

4

Crawford v. Washington,
5     541 U.S. 36 (2004)...............................................13

6
Gallego v. United States,
     276 F.2d 914 (9th Cir. 1960).....................................15
7

La Porte v. United States,
8     300 F.2d 878 (9th Cir. 1962).....................................11

9
Michelson v. United States,
     335 U.S. 469 (1948)..............................................17
10

Ohio v. Roberts,
11     448 U.S. 56 (1980)..............................................11

12
The Monotype Corporation PLC v. Int'l Typeface Corp.,
     43 F.3d 443 (9th Cir. 1994)......................................10
13

U-Haul Int'l v. Lumbermans Mutual Casualty Co.,
14     576 F.3d 1040 (9th Cir. 2009)...................................11

15
United States v. Baker,
     855 F.2d 1353 (8th Cir. 1988)....................................11
16

United States v. Barrow,
17     400 F.3d 109 (2d Cir. 2005).....................................20

18
United States v. Black,
     767 F.2d 1334 (9th Cir. 1985)....................................15
19

United States v. Bonallo,
20     858 F.2d 1427 (9th Cir. 1988)...................................11

21
United States v. Catabran,
     836 F.2d 453 (9th Cir. 1988).....................................11
22

United States v. Chu Kong Yin,
23     925 F.2d 990 (9th Cir. 1991).....................................15

24
United States v. Cisneros,
     No. 17-CR-229, 2018 WL 3702497 (C.D. Cal. 2018)................20
25

United States v. Collicott,
26     92 F.3d 973 (9th Cir. 1996)...............................19, 20

27
United States v. Crespo de Llano,
     838 F.2d 1006 (9th Cir. 1987)....................................14

28

ii

United States v. Crosgrove,
    637 F.3d 646 (6th Cir. 2011)................................20

United States v. Emmert,
    829 F.2d 805 (9th Cir. 1987)...............................19

United States v. Gafney,
    No. 20-CR-50037, 2021 WL 4893576 (9th Cir. Oct. 20, 2021).....10

United States v. Gil,
    58 F.3d 1414 (9th Cir. 1995)...............................14

United States v. Hardwick,
    544 F.3d 565 (3d Cir. 2008)................................20

United States v. Harry,
    816 F.3d 1268 (10th Cir. 2016).............................18

United States v. Larson,
    460 F.3d 1200 (9th Cir. 2006)..............................14

United States v. Mendoza-Prado,
    314 F.3d 1099 (9th Cir. 2002)..............................18

United States v. Miranda-Uriarte,
    649 F.2d 1345 (9th Cir. 1981)..............................16

United States v. Norton,
    867 F.2d 1354 (11th Cir. 1989) ............................11

United States v. Pelisamen,
    641 F.3d 399 (9th Cir. 2011)...............................15

United States v. Powell,
    955 F.2d 1206 (9th Cir. 1992)..............................22

United States v. Ray,
    930 F.2d 1368 (9th Cir. 1990)..............................11

United States v. Scholl,
    166 F.3d 964 (9th Cir. 1999)...........................11, 18

United States v. Smith,
    893 F.2d 1573, 1579 (9th Cir. 1990)........................15

United States v. Taylor,
    716 F.2d 701 (9th Cir. 1983)...............................15

United States v. Torres,
    794 F.3d 1053 (9th Cir. 2015)..............................19

United States v. Vallejos,
    742 F.3d 902 (9th Cir. 2014)...........................19, 20

United States v. Williams,
    230 F.3d 1368 (9th Cir. 2000)................................10

United States v. Zavala-Serra,
    853 F.2d 1512 (9th Cir. 1988)...............................14

Zal v. Steppe,
    968 F.2d 924 (9th Cir. 1992)................................22

**FEDERAL STATUTES**

18 U.S.C. § 371..............................................1

18 U.S.C. § 641...........................................1, 2

18 U.S.C. § 1305............................................12

18 U.S.C. § 1956(a)(2)(B)(i)..............................1, 2

**OTHER AUTHORITIES**

Federal Rule of Criminal Procedure 16.......................21

Federal Rule of Criminal Procedure 26.2.....................21

Federal Rule of Evidence 104(a).............................14

Federal Rule of Evidence 106............................19, 20

Federal Rule of Evidence 401................................22

Federal Rule of Evidence 403................................22

Federal Rule of Evidence 404(b)..............................8

Federal Rule of Evidence 405(a).........................17, 18

Federal Rule of Evidence 801(d)(2)..........10, 13, 14, 18

Federal Rule of Evidence 802................................18

Federal Rule of Evidence 803(3).............................18

Federal Rule of Evidence 803(6)...................10, 11, 12

Federal Rule of Evidence 803(8).............................13

Federal Rule of Evidence 803(10)............................13

Federal Rule of Evidence 901(a).............................15

Federal Rule of Evidence 902...............5, 8, 9, 12, 13

Federal Rule of Evidence 1003...............................15

Federal Rule of Evidence 1006.................................7, 8

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.   STATUS OF THE CASE

3

Jury trial is set for November 4, 2021, at 9:00 a.m.  The
4 government estimates that it will take approximately two days to
5 present its case-in-chief.[1]  Trial by jury has not been waived.
6 Defendants are released on bond.

7

### II.   INDICTMENT AND ELEMENTS

8

Defendants have been charged in the Indictment with one count of
9 Conspiracy to Commit Theft of Government Property and International
10 Money Laundering, in violation of 18 U.S.C. § 371; ten counts of
11 Theft of Government Property, in violation of 18 U.S.C. § 641; and
12 two counts of International Money Laundering, in violation of 18
13 U.S.C. § 1956(a)(2)(B)(i).  On February 27, 2019, defendants were
14 arraigned and pleaded not guilty to all charges.

15

Count One of the Indictment charges defendants with Conspiracy
16 to Commit Theft of Government Property and International Money
17 Laundering, in violation of 18 U.S.C. § 371, which has the following
18 elements: (1) beginning in or about March 2014, and ending in or
19 about March 2015, there was an agreement between two or more persons
20 to commit at least one crime as charged in the Indictment; (2) the
21 defendant became a member of the conspiracy knowing of at least one
22 of its objects and intending to help accomplish it; and (3) one of
23 the members of the conspiracy performed at least one overt act on or
24 after March 19, 2014, for the purpose of carrying out the conspiracy.

25

Counts Two through Eleven of the Indictment charge defendants

26

27

[1] This estimate excludes the time necessitated for jury
selection.  Defense has not provided the government an estimate as to
28 its time for cross-examination or the presentation of any defense
case.

with Theft of Government Property, in violation of 18 U.S.C. § 641, which has the following elements: (1) the defendant knowingly stole, purloined, and converted to the defendant's use or the use of another, money and things of value with the intention of depriving the owner of the use or benefit of that property; (2) the property belonged to the United States; and (3) the value of the property was more than $1,000.

Counts Twelve and Thirteen of the Indictment charge defendants with International Money Laundering, in violation of 18 U.S.C. § 1956(a)(2)(B)(i), which has the following elements: (1) the defendant transported, transmitted, or transferred money from a place in the United States to or through a place outside the United States; (2) the defendant knew that the money represented the proceeds of theft of government property; and (3) the defendant knew the transportation, transmission, or transfer was designed in whole or in part to conceal or disguise the nature, location, source, ownership, control of the proceeds of theft of government property.

## III. STATEMENT OF FACTS

The government intends to prove at trial the following facts, among others:

Between in or around March 2014 and in or around March 2015, defendants conspired to, and did, steal government property, namely, federal income tax refunds, and wired the majority of the stolen refund proceeds to co-conspirators in the United Kingdom.

Defendants and their co-conspirators used, and caused to be used, defendants' bank account information in connection with the filing of fraudulent federal income tax returns with the Internal Revenue Service ("IRS") in the names of taxpayers who did not

2

authorize the filing of those returns and whose information was
fabricated.  The fraudulently filed returns requested tax refunds of
varying amounts, typically between $8,000 and $10,000, and were
submitted using bank account information that would cause the refund
proceeds to be transmitted into defendants' bank accounts.  The
deposits were made either directly into those accounts by the IRS or
through third-party services like the Santa Barbara Tax Group
("SBTPG"), a financial service used by tax preparers to collect fees
from the IRS refund before disbursing the remainder into defendants'
accounts.[2]  The total amount deposited into defendants' bank accounts
due to the conspiracy was at least approximately $294,687.

After the refund proceeds were deposited, defendants knowingly
converted them to their own use and/or the use of another by
transferring proceeds between bank accounts under their control,
withdrawing proceeds for themselves, and/or wiring proceeds to co-
conspirators overseas, including to co-conspirator accounts at TSB
Bank PLC (formerly known as Lloyds) ("TSB") and Barclays Bank UK PLC
("Barclays"), both which were in the United Kingdom.

**IV.  ANTICIPATED TRIAL EVIDENCE**

**A.   Witnesses**

The government anticipates calling three categories of witnesses
during its case-in-chief:

---

[2] In the event a tax client opted to pay for tax preparation
services out of the resulting IRS refund, SBTPG would identify a
temporary, SBTPG-controlled account in the tax return as the account
into which any resulting refund should be deposited.  Once the IRS
deposited the refund into the SBTPG-controlled account, SBTPG would
deduct the relevant fees and disburse the remainder of the refund
into the account identified by the tax client.  Of note, SBTPG
recently changed its name to the "Tax Products Group," but for
simplicity, the government will continue to refer to it as SBTPG.

3

1    First, witnesses from the government, including from the IRS and
2    Special Agents from IRS-Criminal Investigation ("IRS-CI"), who the
3    government expects will lay the foundation for IRS records, introduce
4    evidence obtained from the search of defendant Victor Ohiri's
5    residence on Orange Drive in Los Angeles, California, and summarize
6    financial and other records from the case.  The government expects
7    the testimony of IRS Court Witness and Records Custodian Roman
8    Hernandez to include official IRS records he retrieved from IRS
9    databases, including his review of employer-provided Wage and Income
10   information for victim taxpayers, and their failure to match the Wage
11   and Tax Statements ("W-2 forms") filed with the fraudulent tax
12   returns.

13   Second, victim taxpayer witnesses who the government expects
14   will testify that the fraudulent tax returns submitted in their names
15   -- which led to the refunds being deposited into defendants' bank
16   accounts -- were not submitted by them, and contained false and
17   fraudulent information, including named dependents, employment
18   information, and purported contact information.  The parties have
19   agreed to stipulate to the testimony of four of the victim taxpayer
20   witnesses.  (See CR 113, 114, 115 and 144.)

21   Third, witnesses from third-party companies and financial
22   institutions, including from: (1) Intuit, a company that makes the
23   tax preparation software ("TurboTax") used to submit many of the
24   fraudulent tax returns; (2) SBTPG, which was used by Intuit to
25   collect fees from IRS tax refunds prior to disbursing the remainder
26   into defendants' bank accounts; and (3) banks at which defendants
27   interacted with (now former) bank employees during the period of the
28   conspiracy.

4

Finally, if the Court determines that their testimony is permissible under its prior ruling (CR 138) (the "prior ruling") (see id. at 5, n.2), which is discussed in greater detail below (see infra Section V), the government anticipates calling two individuals who prepared defendants' tax returns for tax years 2013 and 2014.  The government reserves the right to call additional witnesses during rebuttal, including, if appropriate pursuant to a further ruling by the Court, a witness to introduce defendant Stephen Danielson-Ohiri's proffer statements.  (See CR 138 at 4.)

**B.    Types of Evidence**

The government anticipates admitting the following general types of evidence at trial, in addition to the testimony described above:

- IRS Public Records:  Federal tax returns and wage and income information submitted to the IRS, as well as individual account transcripts, that are certified in accordance with Rule 902(4) and/or can be authenticated by IRS Court Witness and delegated Records Custodian Roman Hernandez.

- Domestic and Foreign Bank Records:  Records from financial institutions and money transfer services at and through which defendants and their co-conspirators held accounts that were used to receive, withdraw, transfer, and/or wire fraudulent refund proceeds.  These banks and companies include Citibank, JP Morgan Chase, Bank of America, Wells Fargo, TSB Bank, Barclays Bank, Moneygram, and Western Union, and the records include wire transfer records, bank statements, deposit and withdrawal records, and in-bank or ATM surveillance images of relevant transactions.  The Court has granted the government's motion in limine and a second supplement to that

5

motion to admit business and foreign records (CR 138 at 2);
the government's request for clarification as to the status
of its first supplement to that motion, which covered
certified business records from Citibank and third-party tax
software platform Refundo, is still pending.  (See CR 105 at
1-2 (first supplement to the government's motion in limine to
admit business records); and CR 143 (request for order).)

- Third Party Tax Preparation and Submission Records:  Records
  obtained from third-party tax preparation and submission
  companies, including Intuit, Refundo, H&R Block, EPS
  Financial, and SBTPG.  SBTPG provides financial services to
  tax preparers and preparation platforms, such as Intuit, that
  allow individuals to pay for the tax preparation services out
  of the IRS-issued refund instead of paying those fees
  upfront.  SBTPG's records include the date the tax returns at
  issue were submitted, whether they were accepted or rejected
  by the IRS, the account number of the SBTPG-created account
  into which the refunds were initially deposited, the amount
  of fees deducted from those refunds, and the individual
  accounts into which the remaining refund proceeds were
  deposited, purportedly on behalf of the victim taxpayers.  As
  with the bank records, most of these records were already
  admitted by this Court pursuant to its prior ruling.  (See
  CR 138 at 2 and CR 143 (request for order).)

- AT&T Phone Records:  Tolls and phone records for defendants'
  landline and cellular phone accounts during the period of the
  charged conspiracy.  These records were admitted pursuant to
  the Court's prior order.  (See CR 138 at 2.)

- **Documents from defendant Victor Ohiri's Residence**: Documents seized during the search of defendant Victor Ohiri's residence on Orange Drive in Los Angeles, California, including bank statements, wire and money transfer records, and receipts and photographs of the bedroom in which these records were found. The government expects that IRS-CI Special Agent Luke Yoo, the team leader for that search who was present when the records were found, will testify as to the finding of those documents and lay the foundation for their authenticity.

- **Summary Charts**: Charts that summarize, among other things, voluminous financial and IRS records to show: (1) the dates on which the fraudulent tax returns were filed; (2) the dates on which the refund proceeds were deposited into defendants' bank accounts in furtherance of the charged conspiracy; and (3) defendants' subsequent use and transfer of the refund proceeds to and through various bank accounts under their control and to co-conspirators overseas. The summary charts will be admitted pursuant to Rule 1006 and the Court's prior ruling. (CR 138 at 3-4.)

On October 19, 2021, the government disclosed to defense its anticipated witness and exhibit list, and further provided defendants with an electronic set of its intended trial exhibits. The government reserved the right to make changes to those lists, as needed and appropriate.

To date, the government has not received any reciprocal discovery, including any planned exhibits or witness statements from any witnesses that defendants intend to call at trial. The

government has requested reciprocal discovery through its discovery
production letters.

**V.    MOTIONS IN LIMINE**

The government filed four motions _in limine_ to admit the
following evidence: (1) business and foreign records pursuant to
Rule 902(11) (the "Rule 902(11) motion and supplements") (CR 85, 105,
and 116 (motion and first and second supplements)); (2) summary
charts pursuant to Rule 1006 (the "Rule 1006 motion") (CR 106
(amended motion) and CR 108 (reply)); (3) defendant Stephen
Danielson-Ohiri's proffer statements (the "Proffer Statements
motion") (CR 88); and (4) evidence that is inextricably intertwined
or, in the alternative, admissible pursuant to Rule 404(b) (the "Rule
404(b) motion") (CR 101).  On December 30, 2019, defendant Victor
Ohiri filed an opposition to the Rule 1006 motion.  Defendants did
not file oppositions to the government's other motions.  Furthermore,
during the pre-trial conference held on October 13, 2021, defendants
stated that they did not oppose the Rule 902(11) motion and
supplements, and stipulated to the foundation of the business and
foreign records covered by that motion. (CR 138 at 2.)

On October 14, 2021, the Court granted the original Rule 902(11)
motion (CR 85) and the second supplement (CR 106),[3] as well as the
Rule 1006 motion.  (CR 138 at 2-4.)  As to the Rule 404(b) motion,
the government had moved to admit, among other evidence, the

---

[3] On October 22, 2021, the government filed a request for
clarification regarding its first supplement to the Rule 902(11)
motion (CR 105), which was not specifically referenced in the Court's
prior ruling (CR 138) granting the Rule 902(11) motion (CR 85) and
the second supplement (CR 116).  (CR 143.)  Defendants have not
opposed or otherwise responded to this request, which remains
pending.

8

substantive details of defendants' federal tax returns to prove, among other things, defendants' failure to disclose the proceeds of the fraudulent tax returns.  The Court denied the motion but stated it would reconsider the admissibility of such evidence if defendants argue at trial that they received the refunds as part of a legitimate business scheme.  (Id. at 5 n.2.)  Finally, the Court reserved judgment on the Proffer Statements motion pending events at trial. (Id. at 4.)

On October 19, 2021, the government filed a motion in limine to admit the filing dates and requested refunds from defendants' tax returns, which seeks to narrowly admit only the dates defendants filed their personal federal tax returns and the amounts, if any, of the refund requested.  (CR 141.)  On October 24, 2021, defendant Victor Ohiri filed an opposition to the motion and the government subsequently filed a reply.  (CR 145 and 149.)  If the Court grants the government's motion in limine, which remains pending, the government will seek to admit the two requested facts from defendants' tax returns through the IRS Court Witness Roman Hernandez.  The government would not seek to admit IRS records of defendants' actual tax returns into evidence.

## VI.  LEGAL AND EVIDENTIARY ISSUES

### A.  Stipulations

The parties have filed stipulations to admit the testimony of four victim taxpayer witnesses: M.C. (CR 113), C.H. (CR 114), B.B. (CR 115), and R.K. (CR 144).

### B.  Business and Public Records

Domestic Business and Foreign Records:  As described more fully in its Rule 902(11) motion and supplements (CR 85, 105, 116), the

1   government will seek to admit documents and records that were

2   obtained from banks, tax preparation software platforms and

3   processors, wire transfer services, telecommunications companies, and

4   other business entities.  These records include, among others, the

5   records described in the summary of the trial evidence included,

6   above.  (See supra Section IV.B.)

7        These business records fall under the exception to the hearsay

8   rule for records of regularly conducted activity.  Fed. R. Evid.

9   803(6).  "[A] business record is admissible when (1) it is made or

10  based on information transmitted by a person with knowledge at or

11  near the time of the transaction; (2) in the ordinary course of

12  business; and (3) is trustworthy, with neither the source of

13  information nor method or circumstances of preparation indicating a

14  lack of trustworthiness."  The Monotype Corporation PLC v. Int'l

15  Typeface Corp., 43 F.3d 443, 449 n.6 (9th Cir. 1994).[4]

16       Challenges to the accuracy or completeness of business records

17  ordinarily go to the weight of the evidence and not its

18

---

19  [4] Should defendants claim that they earned the refund proceeds
    as part of a legitimate business scheme, the government intends --
20  pursuant to the Court's prior ruling (CR 138 at 5 n.2) -- to admit
    statements defendants made to their tax preparers, Fanny Ordonez and
21  Emmanuel Okpara, whom the government would call as witnesses.  These
    statements include, but are not limited to, what defendants
22  identified as sources of income.  Defendants' statements to the tax
    preparer witnesses regarding the sources of their income are not
23  hearsay because: (1) a party's own statement made in his individual
    capacity is not hearsay when offered by an opposing party; and
24  (2) the government would offer these statements to show their effect
    on the tax preparer witnesses -- namely, that the fraudulent refund
25  proceeds were not reported as income in defendants' tax returns --
    not for the truth of the matter asserted.  See Fed. R. Evid.
26  801(d)(2)(A) and (c)(2); United States v. Williams, 230 F.3d 1368
    (9th Cir. 2000) (holding that defendant's statements were admissible
27  against him under Rule 801(d)(2)(A)); United States v. Gafney,
    No. 20-CR-50037, 2021 WL 4893576, at *1 (9th Cir. Oct. 20, 2021)
28  (messages "admitted to show their effect on [the listener], not for
    their truth" were non-hearsay).

1    admissibility.  See United States v. Scholl, 166 F.3d 964 (9th Cir.
2    1999), as amended on denial of reh'g (Mar. 17, 1999); La Porte v.
3    United States, 300 F.2d 878, 880—82 (9th Cir. 1962).  Because
4    Rule 803(6) represents a firmly rooted hearsay exception, if non-
5    testimonial evidence meets the requirements for admission under the
6    Rule, no further showing of reliability is necessary for admission
7    under the Confrontation Clause.  See Ohio v. Roberts, 448 U.S. 56, 66
8    n.8 (1980), overruled on other grounds by Crawford v. Washington, 541
9    U.S. 36 (2004); United States v. Ray, 930 F.2d 1368, 1371 (9th Cir.
10   1990); United States v. Norton, 867 F.2d 1354, 1363 (11th Cir. 1989);
11   United States v. Baker, 855 F.2d 1353, 1360 (8th Cir. 1988).

12        Moreover, computer printouts that are compilations of data
13   regularly maintained by a business, such as printouts from a bank's
14   internal accounting systems or other systems that business entities
15   maintain in the ordinary course of its business, are admissible as
16   records of regularly conducted activity pursuant to Rule 803(6).  See
17   United States v. Catabran, 836 F.2d 453, 458 (9th Cir. 1988) ("Any
18   question as to the accuracy of the printouts, whether resulting from
19   incorrect data entry or the operation of the computer program, as
20   with inaccuracies in any other type of business records, would have
21   affected only the weight of the printouts, not their
22   admissibility."); United States v. Bonallo, 858 F.2d 1427, 1436 (9th
23   Cir. 1988) ("The fact that it is possible to alter data contained in
24   a computer is plainly insufficient to establish untrustworthiness.
25   The mere possibility that the logs may have been altered goes only to
26   the weight of the evidence not its admissibility."); U-Haul Int'l v.
27   Lumbermans Mutual Casualty Co., 576 F.3d 1040, 1043-44 (9th Cir.
28

                                   11

1   2009) (computer records kept in the regular course of business

2   activity properly admitted under Rule 803(6)).

3          Certified records of regularly conducted activity or records

4   generated by an electronic process or system (such as subscriber

5   records and IP address information from a telecommunications company

6   or internet service provider) as well as certified data copied from

7   an electronic device, storage medium, or file (such as data obtained

8   from a bank's internal systems), are self-authenticating when

9   accompanied by a written certification satisfying the requirements of

10  Federal Rules of Evidence 902(11), 902(13), or 902(14).  The

11  government has obtained and produced Rule 902(11) certifications for

12  numerous banks' business records (including bank account information

13  and loan files).  The government produced all of the underlying

14  documents and certifications in discovery and provided defendants

15  with written notice of its intention to move to admit these types of

16  documents under the relevant rules.  As noted above, defendants did

17  not oppose the government's Rule 902(11) motion and supplements.

18         The business records sought for admission also include foreign

19  records of regularly conducted activity, which may be admitted in a

20  criminal trial pursuant to 18 U.S.C. § 3505.  As with Rule 902(11), a

21  party seeking to admit the records must provide written notice.  18

22  U.S.C. § 3505(b).  The government has produced foreign business

23  records and the accompanying certifications from Barclays and TSB in

24  discovery and, as noted in the Court's prior ruling, met the

25  requirements for admission of these records.  (CR 138 at 2.)

26         <u>Public Records</u>:  The government intends to admit public records

27  from the IRS pursuant to testimony from an IRS records custodian

28  and/or signed certifications from the IRS, in accordance with

12

Rule 902(4).  These records include the fraudulent tax returns submitted in the name of the victim taxpayers in this case, information obtained from the IRS regarding those fraudulent tax returns, including information which caused the fraudulently obtained refund proceeds to be deposited into defendants' bank accounts, and IRS account transcripts for the taxpayer victims in whose names the fraudulent tax returns were submitted.  The government has also obtained records of the victim taxpayers' actual W-2 forms, and expects the IRS records custodian to testify that they do not match the W-2 forms submitted with the fraudulent tax returns.[5]

### C.   Co-Conspirator Statements Made to Bank Employees

The government intends to call a former Citibank manager who the government expects will testify about statements that co-defendant Stephen Danielson-Ohiri made to her while attempting to obtain access to the fraudulent refund proceeds in his Citibank accounts.  The government further intends to call a former Chase banker who the government expects will testify as to an in-bank surveillance video showing defendant Victor Ohiri making a $15,000 withdrawal of fraudulent refund proceeds from his Chase bank account.

Statements of one co-conspirator during the course of and in furtherance of the conspiracy may be used against another conspirator because such statements are not hearsay.  See Fed. R. Evid. 801(d)(2)(E).  Further, the Supreme Court has held in Crawford v. Washington, 541 U.S. 36, 56 (2004), that statements made in

---

[5] The government's evidence is that the actual W-2 forms do not match the fraudulent W-2 forms, not that the IRS records custodian searched for, and failed to find, information matching the fraudulent W-2 forms in the IRS's records systems.  Therefore, the evidence is admissible pursuant to Rules 803(8) and 902, and is not subject to the admissibility requirements of Rule 803(10).

furtherance of a conspiracy are "not testimonial" such that their admission does not violate the Confrontation Clause.  As such, the introduction of co-conspirator statements pursuant to Rule 801(d)(2)(E) requires only a foundation that: (1) the declaration was made during the course of the conspiracy; (2) it was made in furtherance of the conspiracy; and (3) there is, including the co-conspirator's statement itself, sufficient proof of the existence of the conspiracy and of the defendant's connection to it. Bourjaily v. United States, 483 U.S. 171, 173, 181 (1987); United States v. Larson, 460 F.3d 1200, 1211 (9th Cir. 2006).

The government must prove by a preponderance of the evidence that a statement is a co-conspirator statement in order for the statement to be admissible under Rule 801(d)(2)(E).  Bourjaily, 483 U.S. at 176; United States v. Crespo de Llano, 838 F.2d 1006, 1017(9th Cir. 1987).  Whether the government has met its burden is to be determined by the trial judge, not the jury.  United States v. Zavala-Serra, 853 F.2d 1512, 1514 (9th Cir. 1988).  The Court may rely on inadmissible evidence, such as a co-conspirator's plea agreement, in determining whether the Rule 801(d)(2)(E) exception applies.  Cf. United States v. Gil, 58 F.3d 1414, 1420 (9th Cir. 1995) (the preliminary determination of whether Rule 801(d)(2)(E) applies is to be made "by the court, not the jury pursuant to Fed. R. Evid. 104(a)"); Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether . . . evidence is admissible.  In so deciding, the court is not bound by evidence rules, except those on privilege.").

14

1

      **D.   Authentication and Foundation**

2      Rule 901(a) provides that "[t]he requirement of authentication

3  or identification as a condition precedent to admissibility is

4  satisfied by evidence sufficient to support a finding that the matter

5  in question is what its proponent claims."  Fed. R. Evid. 901(a).

6  "Evidence may be authenticated by presenting testimony from an

7  individual who has sufficient familiarity with the proffered evidence

8  to identify the evidence and inform the court of the circumstances

9  under which the evidence was created."  See United States v.

10  Pelisamen, 641 F.3d 399, 411 (9th Cir. 2011).

11      Under Rule 901(a), evidence should be admitted, despite any

12  challenge, once the government makes a prima facie showing of

13  authenticity or identification so "that a reasonable juror could find

14  in favor of authenticity or identification . . . [because] the

15  probative force of the evidence offered is, ultimately, an issue for

16  the jury."  United States v. Chu Kong Yin, 925 F.2d 990, 996 (9th

17  Cir. 1991) (citations and internal quotation marks omitted); see

18  also United States v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985).

19  The government need not establish all links in the chain of custody

20  of an item or call all persons who were in a position to come into

21  contact with it.  See Gallego v. United States, 276 F.2d 914, 917

22  (9th Cir. 1960).  Alleged gaps in the chain of custody go to the

23  weight of the evidence rather than to its admissibility.  See United

24  States v. Taylor, 716 F.2d 701, 711 (9th Cir. 1983).  A duplicate is

25  admissible to the same extent as the original unless there is a

26  genuine question as to the authenticity of the original or it would

27  be unfair under the circumstances to admit the duplicate in lieu of

28  the original.  See Fed. R. Evid. 1003; United States v. Smith, 893

1   F.2d 1573, 1579 (9th Cir. 1990).

2       **E.**    **Cross-Examination of Defendants and Defense Witnesses**

3           1.    <u>Cross Examination of Defendants</u>

4         The government does not know whether any of the defendants

5   intend to testify at trial or call any witnesses as part of a defense

6   case.  If one or more of the defendants do testify, the government

7   should be permitted fully to cross-examine them because a defendant

8   who testifies at trial waives their right against self-incrimination

9   and subjects themself to cross-examination concerning all matters

10  reasonably related to the subject matter of their testimony.  A

11  defendant who testifies at trial may be cross-examined as to all

12  matters reasonably related to the issues he puts in dispute during

13  direct examination.  "A defendant has no right to avoid cross-

14  examination on matters which call into question his claim of

15  innocence."  <u>United States v. Miranda-Uriarte</u>, 649 F.2d 1345, 1353-54

16  (9th Cir. 1981).  Defendants' credibility will be crucial if they

17  choose to testify in order to refute the government's showing of

18  knowledge and intent.  Indeed, because defendants are the only

19  witnesses with "direct" evidence of their own knowledge and intent,

20  if they take the stand to deny that they knew the refund proceeds

21  were United States' property, their credibility becomes a key issue.

22          2.    <u>Cross-Examination of Defense Witnesses</u>

23        Defendants have neither provided a witness list to the

24  government nor identified any witnesses they intend to call.  To the

25  extent defendants elect to call witnesses at trial, the government

26  requests that the Court order defendants to provide an offer of proof

27  with respect to the anticipated testimony of those witnesses so that

28  the government may assess whether their testimony would be relevant

1    and otherwise admissible, and whether their testimony would implicate

2    any Fifth Amendment rights those witnesses might have, before the

3    witnesses take the stand.

4         To the extent that defendants seek to call character witnesses,

5    such evidence may be excluded.  The Supreme Court has recognized that

6    character evidence -- particularly cumulative character evidence --

7    has weak probative value and great potential to confuse the issues

8    and prejudice the jury.  See Michelson v. United States, 335 U.S.

9    469, 480, 486 (1948).  This Court thus has wide discretion to limit

10   the presentation of character evidence.  Id.

11        In addition, the form of the proffered evidence must be proper.

12   Rule 405(a) sets forth the sole methods for which character evidence

13   may be introduced.  It specifically states that, where evidence of a

14   character trait is admissible, proof may be made in two ways:  (1) by

15   testimony as to reputation and (2) by testimony as to opinion.  Thus,

16   a defendant may not introduce specific instances of his or her good

17   conduct through the testimony of others. Id. at 477.

18        Furthermore, if any defendant calls a character witness, the

19   government should be allowed to cross examine that witness with

20   information pertaining to how the witness's opinion of defendant's

21   character would change if the witness were confronted with a specific

22   instance of defendant's conduct that rebuts that opinion.  A

23   character witness who offers an opinion on or discusses defendant's

24   reputation for good character on direct examination can be cross

25   examined with relevant specific instances of conduct.  Such cross

26   examination can be properly phrased in the form of "have you heard"

27   or "did you know" questions regarding a defendant's criminal conduct.

28   See United States v. Scholl, 166 F.3d 964, 974 (9th Cir. 1999).

Under Rule 404(a)(2)(A), character evidence is admissible when offered by the prosecution to rebut "evidence of a pertinent trait" of character offered by a defendant.  See also Fed. R. Evid. 405(a).  "[W]hen the defendant 'opens the door' to testimony about an issue by raising it for the first time himself, he cannot complain about subsequent government inquiry into that issue."  United States v. Mendoza-Prado, 314 F.3d 1099, 1105 (9th Cir. 2002) (quoting United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992)).

**F.  Defendants May Not Introduce Their Own Statements, Texts, Email Messages, or Call Recordings**

The government has not received any reciprocal discovery.  However, to the extent defendants have statements, texts, email messages, call recordings, or other evidence of their statements with and to each other, such evidence is inadmissible unless a hearsay exception applies.  As discussed above (see supra n.4), because statements by a party are not hearsay when offered by the opposing party, see Fed. R. Evid. 801(d)(2), the prosecution can properly admit defendants' statements into evidence as party admissions.

Defendants, however, cannot admit their own statements, texts, email messages, or call recordings unless a hearsay exception applies.  See Fed. R. Evid. 802; United States v. Harry, 816 F.3d 1268, 1279 (10th Cir. 2016).  The Court should be wary of any attempt that defendants may make to introduce their own statements using narrowly-tailored hearsay exceptions that do not apply.  For example, any attempt by defendant to introduce their own statements under the "state of mind" exception to the hearsay rule, see Fed. R. Evid. 803(3), should be viewed with skepticism.  Rule 803(3) "narrowly limit[s] those admissible statements to declarations of condition --

18

1  'I'm scared' -- and not belief -- 'I'm scared because [someone]

2  threatened me.'" United States v. Emmert, 829 F.2d 805, 810 (9th

3  Cir. 1987) (citing United States v. Cohen, 631 F.2d 1223, 1225 (5th

4  Cir. 1987).

5      Similarly, the "effect on a listener" exception does not allow

6  defendants to admit all of their statements under the theory that the

7  statements are not offered for the truth, but merely to show what

8  they did in response or why they did what they did.  Any attempt to

9  admit defendants' statements on this basis would be an improper end

10 run around the hearsay rule.  See United States v. Torres, 794 F.3d

11 1053, 1061 (9th Cir. 2015) (upholding exclusion of statements that

12 defendant sought to admit under "effect on the listener" exception as

13 defendant "offered the statements for the truth of the defense

14 asserted" and for the "implied assertions" in the statements that

15 another person sent defendant unwittingly on a drug importation

16 mission).

17     Moreover, any "rule of completeness" argument based on Rule 106

18 is applicable only when one party seeks to introduce a misleadingly

19 tailored excerpt of a statement.  See Fed. R. Evid. 106.  Rule 106

20 "does not, however, require the introduction of any unedited writing

21 or statement merely because an adverse party has introduced an edited

22 version."  United States v. Vallejos, 742 F.3d 902, 905 (9th Cir.

23 2014).  It is proper to admit segments of a conversation without

24 including the entire conversation, and adverse parties are not

25 entitled to offer additional statements just because they exist and

26 the proponent has not offered them.  See United States v. Collicott,

27 92 F.3d 973, 983 (9th Cir. 1996).  If the statements offered by the

28 defendant do not clarify a misleading impression, the district court

1   should exclude them.  _Vallejos_, 742 F.3d at 905; _see also_ _United_
2   _States v. Crosgrove_, 637 F.3d 646, 661 (6th Cir. 2011) (finding that
3   defendant could not introduce text messages under Rule 106 because
4   messages were too far removed in time to correct any misleading
5   impression).  Finally, Rule 106 does not make otherwise inadmissible
6   evidence admissible.  _Collicott_, 92 F.3d at 983; _United States v._
7   _Cisneros_, No. 17-CR-229, 2018 WL 3702497, at *11 (C.D. Cal. 2018)
8   ("[D]efendant's exculpatory statements to law enforcement are
9   inadmissible hearsay and thus cannot be introduced pursuant to
10  Rule 106.").

11        **G.   Defendant Stephen Danielson-Ohiri's Proffer Statements**
12        As noted above (_see_ _supra_ Section V), the Court reserved
13  judgment on the government's Proffer Statements motion unless or
14  until the government shows that defendant Stephen Danielson-Ohiri's
15  conduct at trial has triggered the admission of his proffer
16  statements.  (CR 138 at 4.)  Pursuant to the terms of the proffer
17  agreement, that triggering event will occur if defendant Danielson-
18  Ohiri or his attorneys present any evidence, arguments, or
19  representations (including implications from cross-examination) that
20  are inconsistent with his proffer statements.  _See_ _United States v._
21  _Hardwick_, 544 F.3d 565, 570 (3d Cir. 2008) (finding the waiver
22  triggered by defendant's attempt to shift blame for the crimes to
23  others); _United States v. Barrow_, 400 F.3d 109, 117-20 (2d Cir. 2005)
24  (rejecting defendant's argument that a specific or direct
25  contradiction was required to trigger the waiver).

26        Additionally, in the event that the government is able to admit
27  defendant Stephen Danielson-Ohiri's proffer statements, and those
28  statements reference defendant Victor Ohiri, such statements are

1  admissible as against defendant Victor Ohiri so long as they are not
2  incriminating against him on their face.  (See Proffer Statements
3  motion, CR 188 at 8-10.)  The Court has further indicated that, to
4  the extent the proffer statements are admissible, the Court would
5  permit the government to admit them in rebuttal.

6  **H.  Reciprocal Discovery**

7  The United States has requested reciprocal discovery and Jencks
8  material from defendants.  As of the filing of this trial memorandum,
9  defendants have not produced any reciprocal discovery to which the
10  United States is entitled under Federal Rules of Criminal Procedure
11  16 and 26.2 or the Jencks Act.  Thus, to the extent defendants may
12  attempt to introduce or use any documents at trial that they have not
13  previously produced, the United States reserves the right to object
14  and to seek to have such documents precluded.

15  **I.  Affirmative Defenses**

16  None of the defendants have given notice of any affirmative
17  defenses or an intent to rely on any affirmative defense, including
18  mental incapacity, entrapment, or duress, or an alibi defense, in
19  response to the government's requests for such notice.  Therefore, to
20  the extent defendant may attempt to rely on such a defense, the
21  government reserves the right to object and to move to preclude the
22  defendant from asserting such a defense.

23  **J.  Jury Nullification**

24  The Court should exclude any evidence and/or argument relating
25  to or concerning any possible jury nullification defense.  This
26  includes any evidence and/or argument meant to downplay or minimize
27  the consequences of defendants' conduct by suggesting that the loss
28  in this case was "only" borne by the United States government.  It is

well-established that a defendant does not have a right to a jury nullification instruction.  <u>United States v. Powell</u>, 955 F.2d 1206, 1213 (9th Cir. 1992).  Having no right to seek jury nullification, defendant has no right to present evidence relevant only to such a defense.  <u>Zal v. Steppe</u>, 968 F.2d 924, 930 (9th Cir. 1992) (Trott, J., concurring)("[N]either a defendant nor his attorney has a right to present to a jury evidence that is irrelevant to a legal defense to, or an element of, the crime charged.  Verdicts must be based on the law and the evidence, not on jury nullification as urged by either litigant.").

Since they do not make any fact in issue more or less probable, evidence and arguments meant to play on the jury's sympathy are not relevant under Rule 401 and must be excluded on that basis.  In addition, appeals to sympathy are unduly prejudicial and confusing to the jury and misleading under Rule 403 and, therefore, properly excluded on that basis even if they had some arguable relevance.

**VII. CONCLUSION**

The government respectfully requests leave to file such supplemental memoranda as may become necessary during trial.